1  | RONALD MIRANDA LOPEZ
   | Prison No. E-78629
2  | CTF NORTH YARD

3  | POST OFFICE BOX - 705
   | SOLEDAD, CA 93960-0705

4

**FILED**

JUL 2 2 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

5  | (PETITIONER IN PRO SE)

6  | IN THE UNITED STATES DISTRICT COURT

7  | NORTHERN DISTRICT OF CALIFORNIA

8  | ZZZZZZZZZZZZZZZZZZ   C08-1282 VRW

9

10 | Ronald Miranda Lopez,                  )   Case No. C 08 - 1282 VRW (PR)
11 |                  Petitioner,           )
   | vs.                                    )
12 | The United States District Court       )
   | For The Northern District Of           )
13 | California; Judge Vaughn R.             )   PETITION FOR A WRIT OF MANDATE
   | Walker, U.S. District Court Judge       )   (28 U.S.C. § 1651) And/or MOTION
14 |                  Respondent,            )   FOR RECONSIDERATION OF PETITIONERS
   |                                        )   "DISMISSAL" OF PETITIONERS 28 U.S.C.
15 | J. Tilton, Director, California         )   §2241 PETITION (Fed. R. Civ. P.
   | Department Of Corrections And           )   RULE 60 (b) (6)
16 | Rehabilitation; B. Curry, Warden,       )
   | CTF; B.I.C.E.,                          )
17 |                                        )
   |                  Real Party In          )
18 |                  Interest.              )
   |                                        )

19

20 |         Petitioner is the complainant in this action entitled,Ronald

21 | Miranda Lopez, vs. United States District Court For The Northern District

22 | Of California; Judge Vaughn R. walker, U.S. District Judge; Case Number,

23 | No. C 08 - 1282 VRW (PR). Respondent is the, U.S. District Court for

24 | The Northern District Of California. The Real Party In Interest is;

25 | J. Tilton, Director, California Department Of Corrections And Rehabili-

26 | tation; B. Curry, Warden, CTF; B.I.C.E., Respondent has a clear,present

27 | and ministerial duty to abide by and adhere to the exercise of sound

28 | discretion governed by legal rules to do justice according to the law

( 1 )

1    In conducting hearings, receiving evidence, and to issue rulings

2    consistent with laws governing the subject matter of this petition.

3    Petitioner Ronald Miranda Lopez, submits this petition for Writ of

4    Mandate in order to correct an injustice and compel the Court to

5    entertain Petitioners 28 U.S.C. § 2241 Federal Habeas Petition submi-

6    ted to this Court in which on 03-25-08, the Court dismissed the peti-

7    tion on procedual grounds without adjudicating the claims therein

8    stating:

9        '    "The petition for a writ of habeas corpus must be dismissed

10            because it is well established that a hold or detained letter

11            alone does not sufficiently place an alien in INS (now Bureau -

12            of Immigration and Customs Enforcement ("BICE")) custody to make

13            habeas corpus available. See Garcia v. Taylor, 40 F3d 299,303

14            (9th Cir1994); see also id at 303-04 (mandamus not available to

15            expedite deportations proceedings).

16            It matters not that under 8U.S.C. § 1228(c)(1) a district court

17            may order deportation because said discretion may be exercised

18            only if the deportation is"requested by the United States Attorney

19            with the concurrence of (BICE)." No such request has been made

20            here.(See Exibit A).

21    Respondent has failed and/or refused to exercise sound discretion as

22    follows:

23    Petitioner has Garcia v. Taylor, 40 F3d 299,301 (9th Cir 1994); as a

24    controlling case in his 28 U.S.C. § 2241 Petition which was filed on

25    the 03-25-08  and rendered all pending motions moot, but Petitioner as

26    in(Garia, Supra 40 F3d at 300). Now, petitioner moves this Honorable

27    United States District Court to grant relief to his Writ Of Mandate /

28    28 U.S.C. § 2241 Petition in order to activate "BICE" to expedite his

Deportation Hearing as Goverment has duty to follow terms of expedited

hearing statute delivering process to the "EXTENT POSSIBLE" for there

is NO other "ADEQUATE REMEDY" see 8 U.S.C.(1998 Ed.) § 1252 a (d) (1).

As in Garcia, Petitioner's conviction makes him an aggraviated felon,

see, 8 U.S.C. § 1101 (a)(43)(A) and as an aggraviated felon he is

subject to provisions of 8 U.S.C. § 1252, and is to be provided an

Expdited Deportation Hearing. See, 8 U.S.C. 1252 a(d)(1) and Petitioner

is bringing this Mandamus into action claiming that "BICE" had not

given Petitioner previously nor is presently taking the steps to give

appellant an expedited hearing that the law promise (or threatened).

As in Garcia appellant has been told by the Court that appellant depor-

tation hearing will not occur , and that he would not get one untill

such be requested by the U.S. Attorney with the concurrence of "BICE"

and that no such of request has been made to the Court. Therefore,

Appellant is bringing this MANDAMUS action against Respondent, asking

to direct PRISON OFFICIALS AND BICE to take appropriate steps to

commence Appellant's Deportation Hearing and complete the administrative

process within the time prescribed by Congress.

JURISDICTION: Although there is some misdirection at District Court

Level, the simple fact is that petitioner is not seeking habeas corpus

alone, but the District Court ultimately must recognize that Petitioner

is seeking MANDAMUS and this case must stand to entertain Petitioner's

28 U.S.C. § 2241 Petition. In general, the District Court has juris-

diction pursuant to 28 U.S.C. § 1361. And it is an issue that already

has been settled. We have already said that Prisoner Aliens who seek

Mandamus to force "BICE" to start deportation proceedings do have

Standing. See, Sylveyra v. Moschorak. 989 F.2d 1012, 1014 & n.1, 1015

(9th Cir. 1993) (Per Curiam), that applied to Gracia's and as well as

1   to Petitioner. Therefore, there can be no doubt that Petitioner have
2   Jurisdiction.

3   Petitioner as in Garcia's case claim, that the Goverment has failed
4   to conduct deportation proceedings in a timely fashion. (Garcia, Supra-
5   40 F 3d at 302) (FN2) " A Writ Of Mandamus is appropriately issued
6   only when (1) The plaintiff's claim is clear and certain; (2) The de-
7   fendant official's duty to act is ministerial, and so plainly prescribed
8   as to be free from doubt; (3) NO OTHER ADEQUATE REMEDY IS AVAILABLE."
9   See, Barron v. Reich, 133 F. 3d 1370, 1374 (9th Cir. 1994).
10  Petitioner contends that this claim is clear and certain. Petitioner
11  claims that the Goverment – He only the BOP and the "BICE" HAS THE
12  OBLIGATION to follow the terms of 8 U.S.C. § 1252 a (d)(1). Petitioner
13  have no doubt that the Goverment does have that duty, and, as Petitio-
14  ner have already pointed out, there is no doubt that Petitioner as in
15  Garcia, is seeking to enforce adherence to that duty. See, Silveyra,
16  989 F. 2d at 1014 & n. 1, 1015.

17  THE MINISTERIAL DUTY;

18          " In holding against Garcia, the District Court simply
19          noted that he was not scheduled for actual release – the
20          probable release datewas three years away. Thus, it said,
21          there was still time to commence and complete proceedings
22          before the release date came, so Garcia was not entitled
23          to relief. With all due respect, we believe that misstates
24          the inquiry. The proper inquiry is whether the Goverment
25          has any intention of attempting to complete the administra-
26          tive process  before Garcia's release date. Let there be
27          all the time in the world, if the Goverment has expressed
28          an intention to proceed in a manner that will violate the –

( 4 )

1    Statute, Mandamus may lie.

2  This is an administrative act carried out in a prescribed manner

3  Not allowing for personal discretion, and it is evident that Appellant

4  has a INS, now "BICE" detainer or an Immigration Hold and he was on a

5  Delivery Bond right before he was convicted and sent to prison.

6  Statute directs that the Attorney General "Shall provide for the ini-

7  tiation... of Deportation Proceedings" before release date. See,

8  8 U.S.C. § 1252 a (d)(1). There can be No Doubt that the Goverment

9  'has complied with that directive. Were that all, this case would be

10  at an end.

11  **Another adequate remedy?** Appellant do not perceive another

12  remedy which would be adequate to solve appellant's diffic-

13  ulty. But certainly appellant have previously decided that

14  there can be no administrative Procedure Act remedy. See

15  Silveyra, 989 F2d at 1015. Appellant have declared that there

16  is no private right of action. See Urbina-Mauricio v.INS,

17  989 F2d 1085, 1088 (9th Cir. 1993). Some circuits have held

18  that a detainer does not place a person in custody for Hab-

19  beas Corpus purposes. See Orozco v. INS, 911 F2d 539, 541 -

20  (11th Cir. 1990). One circuit has pronounced itself unsure

21  and has remanded for a determination of just what the efect

22  of the detainer is. See Vargas v. Swann, 854 F 2d 1028, 1032-

23  33 (7th Cir.1998). Petitioner has stablished that a detai-

24  ner plus a warrant does constitute a form of custody. See,

25  Chung Young Chew, 309 F 2d at 865. Appellant have also indi-

26  cated that a claim that a detainer letter is sufficient to

27  place a person in custody is not frivolous. See, Guti, 908

28  F 2d at 946. This record must now be fleshed out so that

1    the District Court can determine whether **the Real Party in**
2    **Interest** is compl ying with the legislative command that it,
3    "to the extent possible," complete **"the deportation proceed-**
4    **ings and any administrative appeals thereof"** before appe-
5    llant's ele gible release date. See, 8 U.S.C § 1252 a(d)(1).
6    Petitioner has exceeded all state and federal guide line
7    ranges for his "aggraviated felony" under 8 U.S.C. § 1101
8    (a) (43)(A) and persuant to 8 U.S.C. § 1182 (a)(2)(A)(i)(I):
9    all **"aggravaited fellons"** are not eligible or suitable for
10   parole in The United States, which was fully discussed in
11   Simeonov v. Ashcroft, 371 F 3d 532, 534-38 (9th Cir.2004).
12   Also, eventhough petitioner was sentenced to 25 years to
13   life, under the law, he has completed the actual mandated
14   years required by his sentence which was "16 years 8 months"
15   See, (In re Jeanice D., 28 Cal.3d 210, 220 fn.10 1980), **Peti-**
16   **tioner** has served eighteen straight years plus County credits
17   to the date, and has fulfilled the actual years required by
18   his sentence thereby further allowing deportation proceedings
19   begin as soon as posssible. Petitioner has been in State
20   custody for over eighteen years straight waiting for I.N.S.
21   (now **"BICE"**) officials to afford petitioner a fair and im-
22   partial deportation hearing in accordance with 8 C.F.R. -
23   §3.14 (a) and be deported to Nicaragua.
24
25   Petitioner is a person beneficially interested in the pro-
26   ceeding,and petitioner, respondent, and real party in inte-
27   rest are the parties who will be affected by this proceeding;
28   The United States District Court for The Northern District -

(6)

Of California; Judge Vaughn R. Walker, U.S. District Judge
Respondent,

J. Tilton, Director, California Department Of Corrections
And Rehabilitation; B. Curry, Warden, CTF; "BICE.", Real
Party In Interest.

Petitioner has no plain, speedy, and adequate remedy in the
ordinary course of law other than by this petition in that
there is no other adequate procedure to require respondent
to use discretion governed by legal rules to do justice
according to the mandate of law and the constitution, or to
otherwise entitle petitioner to enjoy the benefits sought
through this petition;FOR WRIT OF MANDATE.

Petitioner has performed all conditions precedent to the
filing of this petition by having first exhausted all avai-
lable remedies. See, Exibit for DIRECTOR'S LEVEL APPEAL -
DECISION ATTACHED TO 28 U.S.C. § 2241.

At all times mentioned herein, respondent has been able to
adhere and follow the mandate of law which govern the within
subject matter. Notwithstanding such ability and despite
petitioner's demand(s) as stated herein, respondent continues
to fail and / or refuses to order relief petitioner seeks.
Petitioner is particulary aggrieved by the denial of adju-
dicating his 28 u.S.C. §2241 Petition in that unless restrai-
ned and prohibited by order of this Court, the respondent
court threatens to, intend to, and will pass upon, hear,try
and decide motions, and proceedings,, in reliance on erro-
neous prior ruling.

1    No other petition for Writ Of Mandate/Prohibition has been

2    made by or on behalf of this Petitioner relating to this

3    matter.

4        WHEREFORE, Petitioner prays that:

5    A peremptory Writ Of Mandate be issued, compelling the res-

6    pondent Court to adjudicate petitioner's 28 U.S.C. §2241

7    Petition filed to the Court and order "BICE" to iniciate

8    Deportation Proceedings.

9    A peremptory Writ Of Mandate be issued directing and compe-

10   lling the respondent court to vacate its erroneous ruling

11   and to issue a new and different order.

12   This Court order such other or further relief as may be

13   appropriate in the interest of justice.

14

15   Dated: July/20 / 2008          Respectfully submitted,

16

17

18                                  Ronald M.Lopez,E-78629

19                                  Petitioner in pro per

20

21

22

23

24

25

26

27

28

( 8 )

EXHIBIT   "A"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD M LOPEZ,                          )
                                         )
            Petitioner,                  )    No. C 08-1282 VRW (PR)
                                         )
    vs                                   )    ORDER OF DISMISSAL
                                         )
BEN CURRY, et al,                        )    (Doc # 2)
                                         )
            Respondent(s).               )
                                         )

18      Petitioner, an alien and state prisoner in the custody of the California

19   Department of Corrections and Rehabilitation, has a file a pro se petition for a

20   writ of habeas corpus under 28 USC § 2241 seeking an expedited deportation

21   hearing. He also seeks leave to proceed in forma pauperis which, good cause

22   appearing, is granted.

23      The petition for a writ of habeas corpus must be dismissed because it is

24   well-established that a hold or detained letter alone does not sufficiently place an

25   alien in INS (now Bureau of Immigration and Customs Enforcement ("BICE"))

26   custody to make habeas corpus available. See Garcia v Taylor, 40 F3d 299, 303

27   (9th Cir 1994); see also id at 303-04 (mandamus not available to expedite

28   deportation proceedings).

1    It matters not that under 8 USC § 1228(c)(1) a district court may order

2 deportation because said discretion may be exercised only if the deportation is

3 "requested by the United States Attorney with the concurrence of [BICE]." No

4 such request has been made here.

5    The clerk shall enter judgment in favor of respondent, terminate all

6 pending motions as moot and close the file.

7    SO ORDERED.

8

9

           VAUGHN R WALKER

10          United States District Chief Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 G:\PRO-SE\VRW\OTHER.08\Lopez, R1.dismiss.wpd

27

28            2

# EXHIBIT "B"

CALCULATION WORKSHEET
OBIS CREDIT CODE 1
CDC 1897D (Rev. 11/02)

## CALCULATION WORKSHEET FOR PC SECTION 2933/2933.3 (WORK INCENTIVE)

This form is used to calculate the Earliest Possible Release Date (ERPD) for inmates with: a) nonviolent offenses occurring on or after January 1, 1983; b) violent offenses occurring between January 1, 1983, and September 21, 1994; c) for inmates whose offense(s) occurred prior to January 1, 1983, and have signed a Penal Code (PC) Section 2934 waiver; and d) camp inmates who are eligible for two for one credit per PC Section 2933.3 effective January 2, 2003. PC Section 2933/2933.3 terms are entered into the Offender Based Information Systems (OBIS) as a Credit Code 1.

1.  Start Date                                                                        12-11-90

2.  Plus (+) Time Imposed                                                        +   2
                                                                                   = 12-11-90

3.  Minus (-) Preprison Credit (presentence, postsentence, and vested credit)    -   553

4.  Plus (+) Dead Time/Minus (-) Meritorious Credit                              +/-

5.  Equals Maximum Date                                                          =   6-7-91

6.  Minus (-) Work Credit Earned                                                 -   70

7.  Plus (+) Net Credit Lost (credit lost minus credit restored)                +   90

8.  Equals Current Release Date (if current work group "C", calculation ends here,   =   6-27-91
    carry date forward to Line 14)

9.  Minus (-) Date Credit Applied Through (or last date of D2 if serving SHU term, or    4-30-91
    Start Date [Line 1] if Line 1 is a future date)                             -

10. Equals Days Remaining to Serve                                              =   58

11. Equals Projected Credit (divide Line 10 based upon work group, round down)   =   19
    [A1 divide by 2]    [A2, B, D1 divide by 3]
    [F divide by 3 (do not round down), then multiply by 2 (round down)]

12. Current Release Date (Line 8)                                                   6-27-91

13. Minus (-) Projected Credit (Line 11)                                         -   19

14. **Equals EPRD - Cannot Exceed Maximum Date (Line 5)**                        =   6-8-91

15. Minus (-) Maximum Date (Line 5)                                                 6-7-91

16. Equals Excess Credit Loss to Apply to Next Period Being Calculated*          =   1  *Carry on to codez.*

*Mixed Credit Codes: when credit lost exceeds credit applied (EPRD is later than Maximum Date), subtract the Maximum Date from the ERPD which equals the days lost to apply to the next period being calculated.

| CALCULATED BY (Name and Title) | | DATE  4-18-07 |
|---|---|---|
| INMATE'S NAME | CDC NUMBER  E 78629 | LOCATION  CTF |

STATE OF CALIFORNIA
CALCULATION WORKSHEET
OBIS CREDIT CODE 32
CDC 1897M (04/00)

DEPARTMENT OF CORRECTIONS

25. app a

## CALCULATION WORKSHEET FOR INDETERMINATE PC SECTION 2931

This form is used to calculate the Minimum Eligible Parole Date (MEPD) for inmates serving indeterminate (ISL) terms eligible for credit per Penal Code (PC) Section 2931. (Note: Inmates convicted of murder committed on/after June 3, 1998 are ineligible for credit, per PC Section 2933.2.) ISL PC Section 2931 terms are entered into the Offender Based Information System (OBIS) as a Credit Code 32.

| Section A - Original MEPD Calculation | | Section B - Participation Credit (PC) | |
|---|---|---|---|
| 1. Start Date | 6-7-91 | 1. CDC Conduct Credit (Section A, Line 11) | _____ |
| 2. Plus Time Imposed | + 25 | 2. Divide Line B-1 by 4, equals | * _____ |
| | = 6-7-2016 | Participation Credit | |

Any fractions over 0.5 are rounded up and fractions under 0.5 are rounded down. When the fraction is exactly 0.5, the PC is rounded down and the BC is rounded up per DOM Section 73030.8.10.

| Section A | | Participation Credit Losses/Restorations | | | |
|---|---|---|---|---|---|
| 3. Minus Pre/Postsentence Credit | - ____ = 6-7-2016 | Date of CDC 115 | Loss | Restored | Net Loss |
| 4. Minus Vested Credit (1/2 postsentence credit) | - ____ = 6-7-2016 | _____ | ____ | _____ | _____ |
| 5. Plus Dead Time | + ____ | _____ | ____ | _____ | _____ |
| 6. Equals Maximum Eligible Parole Date | = 6-7-2016 | _____ | ____ | _____ | _____ |
| 7. Minus Start Date (Line A-1) | - 6-7-91 | 3. Net PC Losses (cannot exceed Line B-2): | | | _____ |

| 8. Equals days to serve | = 9132 | Section C - Behavior Credit (BC) | | |
|---|---|---|---|---|
| 9. Minus Dead Time | - ____ | 1. Participation Credit (Section B, Line 2) | | _____ |
| 10. Equals Days Where Credit May Be Applied | = 9132 | 2. Multiply Line C-1 by 3, equals Behavior Credit | | * _____ |

Behavior Credit Losses/Restorations  Calculation

| 11. Equals CDC Conduct Credit (divide Line A-10 by 3, round up) | = 3044 | Date of CDC 115 | Loss from Code | Restored | Net Loss |
|---|---|---|---|---|---|
| | | 2-28-00 | | | / |
| 12. Maximum Eligible Parole Date (Line A-6) | 6-7-2016 | 5-27-05 | 30 | | 30 |
| 13. Minus CDC Conduct Credit (Line A-11) | - 3044 | _____ | ____ | _____ | _____ |
| 14. Equals Original MEPD | = 2-6-08 | 3. Net BC Losses (cannot exceed Line C-2): | | | 31 |

### Section D: Calculating Adjusted MEPD

Original MEPD (from Section A, Line 14) ............ 2-6-08

Plus Net PC and BC Losses (Line B-3 plus Line C-3) .... + 31

Equals Adjusted MEPD (cannot exceed Maximum Eligible Parole Date) = 3-8-2008

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Maximum Eligible Parole Date (from Section A, Line 6)

| CALCULATED BY (Name and Title) | | DATE 4-18-07 |
|---|---|---|
| INMATE'S NAME Lopez | CDC NUMBER E78629 | LOCATION CTF |

*Line B-2 plus Line C-2 must equal Line A-11/B-1.

EXHIBIT  "C"

# Bill fails to deport immigrant prisoners

## Extradition seen as anti-immigrant, easing punishment

*By James Sterngold*
CHRONICLE STAFF WRITER

The state has struggled for years to reduce the soaring population in its overburdened prisons, but a proposal that could have forced as many as 20,000 inmates who are illegal immigrants to serve their sentences in their home countries has faltered over concerns it would be viewed as anti-immigrant.

The idea of having undocumented immigrants convicted of felonies in California serve their sentences in their home countries has been debated over the years, but it generally stalled based on two objections: concern that the prisoners would be treated differently at home, because they would probably serve shorter sentences; and concern that the inmates might be denied due process in being transferred.

This year, state Sen. Martha Escutia, D-Norwalk, an Hispanic and a strong supporter of immigrant rights, said she believed that the overpopulation problems in the state prisons were too pressing to ignore the idea.

She reasoned, in effect, that since the undocumented inmates are generally deported after they have served their sentences, at the expense of California taxpayers, why wait? So she authored a bill that would hand over most of those inmates to the federal government, which has ultimate responsibility for undocumented immigrants.

Escutia said she pushed the bill because of a breakdown of services in the prison system, ranging from medical care and mental health care to drug rehabilitation, and because nothing else was being done to alleviate the problems. But, she said, the current political atmosphere, in which many people are resisting a potential crackdown on undocumented immigrants by Congress, made it hard to get support.

"This was almost adding wood to the fire," said Escutia. "We

► EXTRADITION: Page A15

## EXTRADITION
*From Page A1*

realized that first we needed to debate immigration reform and then later look at this bill."

The idea failed to reach the floor of the Senate, but Escutia, who will leave office this year because of term limits, said she hopes another legislator will reintroduce the bill later.

Assemblyman Mark Leno, D-San Francisco, said that when the idea of removing the undocumented inmates from the prisons had been considered in the past, it usually received the support of one party, not both, and thus died.

Leno, chairman of the Assembly's Public Safety Committee, said that perhaps only one thing could break the resistance once and for all.

"You know what could alter this?" he asked. "A crisis in the prisons. I'm afraid to say it, but it's not if, it's when."

What was striking about Escutia's proposal was that some groups that traditionally have fought such measures either supported it, declared their neutrality or at least backed away from actively trying to kill it.

"There are some positives with the idea," said Francisco Estrada, the director of public policy in the Sacramento office of the Mexican American Legal and Education Defense Fund, a civil rights group. "The bill was kind of interesting. It could have forced the federal government to play a more active role."

He added, "Some inmates would prefer serving their sen-

### Inmates by country

The countries of origin for the largest groups of inmates in California prisons who are in the country illegally or suspected of being in the country illegally:

**Mexico:** 15,396 inmates
**El Salvador:** 1,075 inmates
**Vietnam:** 743 inmates
**Guatemala:** 464 inmates
**Cuba:** 361 inmates
**Honduras:** 276 inmates
**Russia:** 136 inmates
*Source: Department of Corrections and Rehabilitation*

tences at home to be near their families."

Under current law, Washington is supposed to reimburse the state for the costs of incarcerating undocumented immigrants convicted of crimes, but it has paid less than a quarter of the costs under the Bush administration.

In fiscal 2004, California received only $75 million for its $574 million in costs, and in the current fiscal year the state is receiving $107 million for its $734 million in costs.

The pool of inmates that might be included in the program is huge. Of the nearly 171,000 inmates crowding state prisons, 22,478, or about 13 percent as of March 31, are undocumented immigrants or are suspected of being undocumented.

The overwhelming majority of

those, 15,396, are from Mexico.

Those convicted of the most serious crimes, such as murder, would not have been eligible for the program, and none would have been returned to countries that are not signatories to international treaties that govern the transfer of inmates.

Escutia's staff had estimated that the law would have saved as much as $1 billion, an extraordinary benefit for a corrections system that costs the state more than $8 billion a year.

Far more important, the program could have significantly reduced pressure on an array of prison programs that have been deemed grossly inadequate by federal courts. The nearly 171,000 inmates in the state's 33 prisons is nearly double the design capacity.

When Gov. Arnold Schwarzenegger came into office, he promised major prison reforms and a new parole program that, he said, would reduce the inmate population dramatically. But his corrections department never implemented the changes, and the population has risen from one record level to another.

Escutia and some supporters of her bill said that, in part, it was a victim of the recent demonstrations; no one wanted to be seen supporting a measure that might be perceived as harmful to immigrant rights.

"Once we explained it clearly to people, we were finding some support," said Matthew Gray, a lobbyist for Taxpayers for Improving Public Safety, a sponsor of the bill. "But as soon as you say 'undocumented immigrant' you get this knee-jerk reaction.

No one wants to do anything that seems unfair to the (illegal immigrants) or that singles them out."

One of the toughest opponents of the idea has traditionally been the guards' union. The prison guards have long fought measures that would reduce jobs.

Also, Lance Corcoran, executive vice president of the union, the California Correctional Peace Officers Association, said if criminals break the law here, they should be punished here.

Even so, he agreed that the idea had some appeal because of the unsafe conditions the overcrowding has created in the prisons and the desperate need for some kind of action.

"Our membership at this point would welcome anything that reduces the population," said Corcoran. "But we don't want to do anything that compromises public safety."

He added, "It's premature to say we wouldn't fight it. We'd have to take a long look at it. But it makes sense to think about it."

The corrections department has also traditionally resisted the transfers.

"There need to be assurances that they will serve their whole sentences if they leave," said J.P. Tremblay, the corrections department's spokesman. "That's an issue we're adamant about. We're not going to transfer an inmate just to make room in the prisons."

*E-mail James Sterngold at jsterngold@sfchronicle.com.*

1

2                                    <u>VERIFICATION</u>

3

4        I am the petitioner in this matter. I have read the allegations contained in

5
      the petition and know them to be true by my own personal knowledge.
6

7

8

9

10   EXECUTED THIS _July_____ DAY    _20_____,

11   20<u>08</u> UNDER PENALTY OF PERJURY IN _Soledad,  State Of_____,

12
      CALIFORNIA.
13

14

15

16

17

18                                    Ronald M. Lopez,E-78629

19                                         DECLARANT

20

21

22

23

24

25

26

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, __Ronald M.Lopez__ , declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

> Ronald M. Lopez , CDCR #: E-78629
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 705, CELL #: RB- 244 1.
> SOLEDAD, CA 93960-

On __July /20/ 2008__ , I served the attached:

PETITION FOR DEPORTATION

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows:

Northern District Federal Court
San Jose division
280  S. First St., #2112
San Jose, Ca 95113-3006

United States Attorney
General Office
950 Pennsylvania Ave.,N.W.
Washington, D.C. 20530

Attorney General Office Cal.
455  Gold Gate Ave., Suite 11000
San Francisco, Ca  94102-7004

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __July /20/ 2008__ .

Ronald M. Lopez
Declarant

1 | RONALD M. LOPEZ
Prison No. E-78629
2 | Central Training Facility
NORTH - RB - 244 1.
3 | Post Office Box- 705
Soledad, Ca. 93960-

4

5 | (Petitioner In Pro Se)

6 | IN THE UNITED STATES DISTRICT COURT

7 | NORTHERN DISTRICT OF CALIFORNIA

8 | * * *

9 | )
10 | RONALD M. LOPEZ,          ) Case No. G 08 - 1282 VRW (PR)
   |                           )
11 |          Petitioner,      ) [USINS No. A24824078.
   |   vs.                     ) PETITION FOR A WRIT OF MANDATE/
12 | The U.S. District Court For The ) APPLICATION FOR TITLE 28 U.S.
   | Northern District Of California;) C. §2241 PETITION BY A STATE
13 | BEN CURRY, WARDEN, et al., CTF; ) PRISONER WITH A CURRENT USINS
   | B.I.C.E.,                 ) DETAINER WHO FILES HIS CLAIMS
14 |                           ) PURSUANT TO: 8 C.F.R. §3.14
   |          Respondent.      ) (a), 8 U.S.C. §§1182 (a)(2)(A)
15 | --- . Real Party in Interest ) (i)(I), 1182 (c,h), 1101 (a)
   |                             (43)(A), 1231 (b)(3)(B), 1227
16 | 2 8  U. S. C.  § 2 2 4 1     (a)(2)(A)(iii), 1227 (2)(I)
   |                             (II), 1228 (c), 1230b (a)(1),
17 | P E T I T I O N  F I L E D  B Y  1251 (a)(2)(A)(iii), 1252 et
   |                             seq., and 8 C.F.R. §208.17 (a);
18 | I L L E G A L  A L I E N

19 | S T A T E  P R I S O N E R

   | MEMORANDUM OF POINTS AND
   | AUTHORITIES IN SUPPORTS OF
   | PETITION FOR DEPORTATION

20 | To: The Honorable Presiding Judge of the Northern District
21 | Federal Court, Please Take Notice:

22 | Petitioner, Ronald M. Lopez, an illegal alien from Nicaragua

23 | now moves this United States District Court to grant this

24 | 28 U.S.C. §2241 petition and to order the Bureau of Immigration

25 | and Customs Enforcement ("BICE") officials to activate a

26 | charging document immediately and, thereupon, Petitioner be

27 | deported in accordance with 8 C.F.R. §3.14 (a) and as set

28 | Page-1-Petition for Deportation

1  forth in 8 U.S.C. §§1182 (a)(2)(A)(i)(I), 1182 (c,h), 1101

2  (a)(43)(A), 1231 (b)(3)(B), 1227 (a)(2)(A)(iii), 1227 (I)

3  (II), 1228 (c), 1230b (a)(1), 1251 (a)(2)(A)(iii), 1252 et

4  seq., and C.F.R. §208.17 (a). Petitioner has exceeded all

5  state and federal guideline ranges for his "aggravated felony"

6  under 8 U.S.C. §1101 (a)(43)(A) and pursuant to 8 U.S.C. §1182

7  (a)(2)(A)(i)(I): all "aggravated felons" are not eligible

8  or suitable for parole in the United States," which was fully

9  discussed in Simeonov v. Ashcroft, 371 F.3d 532, 534-38 (9th

10  Cir.2004). Petitioner has been in state custody for over

11  eighteen straight - years waiting for I.N.S. (now "BICE")

12  officials to afford Petitioner a fair and impartial deportation

13  hearing in accordance with 8 C.F.R. §3.14 (a) and be deported

14  to Nicaragua. Based on these facts and and all the supporting

15  evidence presented throughout this petition, Petitioner

16  graciously request this Honorable District Court grant this

17  genuine 28 U.S.C. §2241 petition. (See Exhibit "A" for

18  reference to prison administrative appeal where CTF-Soledad

19  Prison Officials refuse to hear the claims set forth in this

20  petition and stated: they do not have any jurisdiction over

21  the subject matter and federal deportation laws.) Therefore,

22  this is the only remedy available for this Nicaraguan illegal

23  alien. (See Also 8 U.S.C. §1251 (f).)

24  Dated this 20 day of, July , 2008.

                                    Respectfully Submitted,

25

26                                  Ronald M. Lopez
                                    Nicaragua illegal alien State Prisoner
27                                  Petitioner In Pro Se
                                    Without Bar Licensed Counsel

28

                    Page-2-Petition for Deportation

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF IMMEDIATE DEPORTATION

A. Federal Deportation Laws require . . . immediate deportation proceedings to commence against this Nicaraguan illegal alien.

Petitioner maintains the United States District Court of San Jose California holds jurisdiction over his USINS detainer under No. A24824078. Petitioner is currently being held in the CDC&R at CTF-Soledad Level-II State Prison. Petitioner has requested CTF-Soledad Prison Personnel to contact San Jose Bureau of Immigration and Custom Enforcement ("BICE") to activate a charging document and to order Petitioner deportable as stated in Gonzalez - v. - Ashcroft, 369 F.Supp.2d 442, 447 (S.D.N.Y. 2005) ("A conviction for an aggravated felony at any time after admission to the United States subjects all aliens to removal." 8 U.S.C. §1227 (a)(2)(A)(iii).) The offenses that constitute "aggravated felonies" for the purposes of removal are enumerated in 8 U.S.C. §1101 (a)(43)"); and see U.S. - v. - Lopore, 304 F.Supp.2d 183, 186 (D.Mass.2004) ("Pursuant to U.S.C. §1227 (a)(2)(A)(iii), any alien who is convicted of an aggravated felony at any time after admission is deportable.")

Both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), contain comprehensive amendments to the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §1101 et seq. Under §237 (a)(2)(A)(A)(iii) of the INA (8 U.S.C. §1227(a)), noncitizens

Page-3-Petition for Deportation

1  are subject to deportation or removal based on the commission
2  of an "aggravated felony." That is, under the terms of the
3  INA, any noncitizen "who is convicted of an aggravated felony
4  at any time after admission is deportable." Id. 8 U.S.C.
5  §1251 (a)(2)(A)(iii). The INA not only subjects aliens to
6  automatic deportation, it imposes severe sanctions against
7  aliens convicted of aggravated felonies, barring them as
8  ineligible for withholding deportation, and precluding asylum.
9  Once deportation proceedings commence, the alien's rights
10  are severely limited. For example, an aggravated felon facing
11  deportation is presumed to be deportable. Id. 8 U.S.C. §1228
12  (c). The aggravated felon is also ineligible for discretionary
13  relief from removal such as asylum, 8 U.S.C. §1158
14  (b)(2)(B)(I); restriction on removal, 8 U.S.C. §1230a (a)(3);
15  and voluntary departure, 8 U.S.C. §1230b (a)(1).

16      Significantly, an aggravated felon who has been sentenced
17  to an aggravated term of imprisonment of at least 5 years
18  is also ineligible for withholding . . . removal under the
19  Convention Against Torture ("CAT"). 8 U.S.C. §1231 (b)(3)(B);
20  Wang v. Ashcroft, 320 F.3d 130, 136 n. 11 (2nd Cir.2003).
21  The only possible relief an aggravated felon may obtain, if
22  entitled to the protection of CAT, is to have his removal
23  deferred to a country where he or she is not likely to be
24  tortured. Id. 8 C.F.R. §208.17 (a). However, the aggravated
25  felon is still subjected to immediate deportation to another
26  country, but not one that will subject him . . . to torture.
27  Petitioner maintains that he committed an aggravated felony

28              Page-4-Petition for Deportation

1   and now invokes his federal statutory right to a fair hearing

2   and to be promptly deported back to his native country of

3   Canada. See Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir.2003)

4   ("To demonstrate a violation of due process, an alien must

5   demonstrate both a fundamental procedural error and that the

6   error resulted in prejudice.") In the present case Petitioner

7   has been in state custody with an active USINS detainer for

8   **over eighteen** years without state officials affording him any

9   type of deportation hearing and, therefore, Petitioner has

10  presented prejudice.

11  B. Petitioner is currently waiting to be deported back to
    **Nicaragua** however, State Prison Officials are forcing him to

12  work under threat of severe punishment on the prison slave
    labor force in direct violation of several federal illegal

13  alien employment laws.

14      Just because **Petitioner** is a state prisoner waiting to

15  be deported does not allow State Prison Officials to

16  deliberately violate illegal alien labor laws and to force

17  this **Nicaragua** illegal alien to work as a slave. See Kim Ho

18  Ma v. Ashcroft, 257 F.3d 1095, 1110 (9th Cir.2001) ("In

19  particular, the INS's position appears to be clearly

20  inconsistent with the Supreme Court's holding in Wong Wing

21  that illegal aliens within the territorial jurisdiction of

22  the U.S. who had been ordered deported could not be put to

23  hard labor prior to their deportation. Wong Wing v. United

24  States, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896)"

25  (emphasis added.) **Petitioner** maintains that regardless of

26  his request for immediate transfer under the state Government

27  Code §12012.1 . . . that federal deportation laws "override"

28          Page-5-Petition for Deportation

1  state laws and therefore, Petitioner maintains that he is
2  waiting to be deported based solely on federal mandatory
3  NO suitability for U.S. parole federal law set forth within
4  8 U.S.C. §1182 et seq., and that illegal aliens waiting to
5  be deported must not be forced to endure hard labor before
6  deportation. Id., Wong Wing, 163 U.S. at 238. Therefore,
7  San Jose (BICE) officials who currently have total control
8  over. Petitioner's state incarceration and the unlimited power
9  to activate Petitioner USINS warrant, which is authorized
10 by federal statutory laws at anytime after the illegal alien
11 serves five (5) years of his state sentence in accordance
12 with 8 U.S.C. §1227(2)(I) and (II), must be enforced by this
13 Federal District Court. 8 U.S.C. §1227 et seq., states: "any
14 alien who is convicted of a crime involving moral turpitude
15 committed within 5 years, after the date of the admission
16 and is convicted of a crime for which a sentence of one year
17 or longer may be imposed is deportable."

18     In addition, an aggravated felon who has been sentenced
19 to an aggravated term of imprisonment of at least 5 years
20 is also ineligible for withholding his deportation and
21 immediate removal under the Convention Against Torture ("CAT")
22 8 U.S.C. §1231(b)(3)(B); Wang v. Ashcorft, 320 F.3d 130,
23 136 n. 11 (2nd Cir.2003). The limited relief that an
24 aggravated felon may obtain, if entitled to the protection
25 of CAT, is to have his removal deferred to a country where
26 he or she is more likely not to be tortured. Id. 8 C.F.R.
27 §208.17(a). However, even in this situation the aggravated

28        Page-6-Petition for Deportation

felon is still subject to immediate deportation to another country. In this case, Petitioner is from Nicaragua and there is no problem with Nicaraguan officials torturing its citizens and, therefore, Petitioner waives his legal rights under CAT and request immediate deportation to Nicaragua.

Furthermore, the only other area of federal statutory immigration law which must be considered under the fair deportation hearing act, "is the appeal process regarding this **Northern District Court's tentative . . . .** order" granting immediate deportation, as set forth in 8 U.S.C. §1252(a)(2)(C) and **Henderson v. INS**, 157 F.3d 106, 119 (2nd Cir.1998). However, as stated in Henderson, Congress "intended to make . . . administrative decisions (regarding removal) nonreviewable in the fullest extent possible under the Constitution." Id. at 119. The limited judicial avenue available to criminal aliens waiting in the California Prison System to be deported is the REAL ID Act, Pub.L. No. 109-13, 119 Stat. 231 (2005), which amended 8 U.S.C. §1252 to provide judicial review of an order of removal on the form of a "petition for review" in the Court of Appeals. However, this **Nicaragua** illegal alien also waives his right to any appeal under the REAL ID Act and absolutely maintains that he is a native of Nicaragua who was convicted of an aggravated **felony,** which requires his deportation forthwith. (See Exhibit "B" for reference to Petitioner's Birth Certificate and **Nicaraguan** Social Insurance Number.) Based on these factors this Canadian illegal alien is overdue for deportation.

1  C. Petitioner maintains that under the United States Supreme
   Court decision of INS v. St. Cyr, 533 U.S. 289, 325, 121 S.Ct.
2  2271, 2293, 150 L.Ed.2d 347 (2001), it is mandatory that this
   aggravated felon be deported to his country of origin
3  forthwith.

4     Although one can describe the level of certainty of

5  deportation for aggravated felons as mandatory, required,

6  predictable, highly likely, the Second Circuit has described

7  the likelihood as "automatic," United States v. Couto, 311

8  F.3d 179, at 184 (2nd Cir.2002) and moreover the United States

9  Supreme Court calls it "Certain." INS v. St. Cyr, supra,

10 533 U.S. at 325. Therefore, this Nicaragua illegal alien must

11 be deported immediately.

12 D. Any state law used to keep this Nicaragua illegal alien
   in the California Prison System must be "overridden" and that
13 all the federal statutory deportations laws set forth in this
   motion are superior to any state law requirements.

14

15    Petitioner asserts that all the above deportations laws

16 govern his current incarceration in the California Prison

17 System and that State Prison Officials cannot argue that "State

18 Law" overrides "Federal Statutory Deportation Laws regarding

19 aggravated felons." Petitioner maintains that the United States

20 Supreme Court made very clear in Freightliner Corp. v. Myrick,

21 "We have recognized that a federal statute implicitly overrides

22 state law either when the scope of a statute indicates that

23 Congress intended federal law to occupy a field exclusively,

24 English v. General Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct.

25 2270, 2274-2275, 110 L.Ed.2d 65 (1990), or when state law

26 is in actual conflict with federal law. We have found implied

27 conflict pre-emption where it is "impossible for private party

28            Page-8-Petition for Deportation

1  to comply with both state and <u>federal</u> requirements," id.,

2  at 79, 110 S.Ct., at 2275, or where <u>state law</u> "stands as an

3  obstacle to the accomplishment and execution of the purposes

4  and objectives of Congress. Hines v. Davidowitz, 312 U.S.

5  52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 541 (1941)." Id. 514

6  U.S. 280, 115 S.Ct. 1483, 1487 (1995).

7  Petitioner absolutely maintains that (BICE) officials

8  are responsible for deporting illegal aliens and the Congress

9  did not intent for "state administrative" boards to made the

10  decision when state prisoners have federal USINS holds placed

11  on them or for state prison officials to use state law to

12  "override" statutory federal deportation laws.

13  E. Petitioner maintains that CTF-Soledad State Prison Officials
have refused to afford Petitioner any type of a deportation
14  hearing and refuse to hear Petitioner's 602 Inmate/Appeal
where Petitioner is requesting to be deported within federal
15  statutory deportation laws and, therefore, prison officials
are violating Administrative Procedure Act, 5 U.S.C. §706
16  (1)&(2) (A)&(C).

17  Plaintiff maintains that CTF-Soledad Prison Officials

18  have failed to implement an information system to assist

19  illegal aliens in the deportation process and to aid San Jose

20  (BICE) officials with information regarding convicted

21  aggravated felons housed in the prison and this action is

22  arbitrary, capricious, and certainly is an abuse of discretion.

23  CTF-Soledad Prison Officials action or inaction is not in

24  accordance with any federal statutory deportation laws and

25  positively violates the Administrative Procedure Act, 5 U.S.C.

26  §706 (1) & (2)(A) & (C). The Ninth Circuit Appeals Court

27  stated in <u>Cilbent v. National Transportation Safety Board</u>,

28  Page-9-Petition for Deportation

80 F.3d 364, 368 (9th Cir.1996) ("5 U.S.C. §706 imposes a
uniform standard of review over agency determinations without
drawing any such distinctions. Indeed, we have applied an
arbitrary and capricious standard of review in upholding an
agency's refusal to accept late appeal to its Board in
accordance with its internal regulatory guidelines.")

The prison officials here at CTF-Soledad refuse to hear
Petitioner's appeal where he ask the prison administrators
to activate his USINS detainer No.A24824078  and to turnover
his custody to (BICE) Officials in San Jose California. The
prison officials in their CDC 695 response stated that they
do not have subject jurisdiction of these federal deportation
laws and that Petitioner must pursue the matter through the
appropriate agency, which in this case is this U.S. District
Court. (See Exhibit "A" for reference to CDC 602 Inmate/Appeal
filed regarding federal deportation laws.)

F. Petitioner has complied with the Prison Litigation Reform
Act (PLRA), 42 U.S.C. §1997e(a) as required by the United
States Supreme Court in Booth v. Churner, 532 U.S. 731, 741,
121 S.Ct. 1819, 1825 (2001).

In Booth v. Churner, the Supreme Court held that inmates
must exhaust administrative remedies, regardless of the relief
offered through the administrative procedure. Id. at 741.
However, the Sixth Circuit Appeals Court stated in City of
Mount Clemens v. U.S.E.P.A., 917 F.2d 908 (6th Cir.1990)
("Although exhaustion remedies is typically required as a
condition for judicial review, the requirement is not absolute.
The doctrine must be applied in each case with an understanding

1  of its purposes behind the exhaustion doctrine, the courts
2  have allowed a number of exceptions. Thus, exhaustion is
3  not required if administrative remedies are inadequate or
4  not efficacious; [or] where pursuit of the administrative
5  remedies would be a futile gesture." [Citation omitted].)
6  see also Shawnee v. Coal Co. v. Andrus, 661 F.2d 1083, 1093
7  (6th Cir.1981) ("exhaustion is not required if administrative
8  remedies are inadequate"); and Mathews v. Diaz, 426 U.S. 67,
9  76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976) ("Where the
10  only issue presented for review was the constitutionality
11  of a provision of the Social Security Act, exhaustion of
12  administrative remedies would have been futile"). Petitioner
13  maintains he should not be forced to exhaust anymore
14  administrative appeals **based** on the deportation laws within
15  the CDC&R system and that all **appeals** are futile.

16      In **Brown v. Valoff**, 442 F.3d 926 (9th Cir.2005) we read:
17  "While over-exhaustion may be wise so as to expedite late
18  litigation, the fact remains that Booth does not require an
19  inmate to continue to appeal a grievance once relief is no
20  longer available." Id. at 949 fn. 10. As stated above
21  Petitioner presented his appeal to CTF-Soledad Prison Officials
22  which have stated that they lack jurisdiction to hear the
23  federal statutory deportation laws and, therefore, all
24  administrative appeals have been completed.

25  G. Petitioner maintains that under deportation rights this
   case must be considered under "equal protection" and that
   his "aggravated felony" is listed under 8 U.S.C.
26  §1101(a)(43)(A) as all other listed "aggravated felons" now
   being deported and that every other State Prison System in
27  the United States is allowing inmates convicted of second
   degree murder to be deported after the 5 year period is served.
28

Page-11-Petition for Deportation

1      In Gonzalez v. Ashcroft, supra, 369 F.Supp.2d 442

2  (S.D.N.Y.2005) ("A conviction for an aggravated felony at

3  any time after admission to the United States subjects an

4  alien to removal. 8 U.S.C. §1227 (a)(2)(A)(iii). The offenses

5  that constitute "aggravated felonies" for the purposes of

6  removal are enumerated in 8 U.S.C. §1101 (a) (43)." Id. at

7  447.) Petitioner's state crime is listed under (43)(A) (First

8  degree murder one count). Petitioner argues that his

9  deportation must be considered under "equal protection." See

10 Plyler v. Doe, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d

11 786 (1982) (holding that aliens are protected by the Fifth

12 Amendment's equal protection guarantee). To establish an

13 equal protection violation, therefore, Petitioner must identify

14 a class of similarly situated persons who are treated

15 dissimilarly. See Anderson v. Cass County, Mo., 367 F.3d 741,

16 747 (8th Cir.2004).

17     Petitioner positively asserts that state prisoners

18 (illegal aliens) convicted of second degree murder in States

19 other then California, are being deported to there native

20 countries under the same federal deportation laws, which should

21 equally be applied to this California illegal alien state

22 prisoner. Petitioner supports his contentions based on the

23 federal deportation cases of: Tulloch v. I.N.S., 175 F.Supp.2d

24 644, 647 (S.D.N.Y.2001); Boston-Bollers v. I.N.S., 106 F.3d

25 352, 353 (11th Cir.1997); James v. Reno, 97 Fed.Appx. 340

26 (2nd Cir.2004) and also Giap v. I.N.S., 311 F.Supp.2d 438,

27 439 (S.D.N.Y.2004) ("In 1997, a jury in New York City convicted

28

1  Giap second degree murder, for which he was sentenced to 25

2  years to life in prison.  Following that conviction, the

3  Immigration and Naturalization Service ("INS") charged Giap

4  with being deportable as an alien convicted of a aggravated

5  felony. See 8 U.S.C. §1227 (a)(2)(A)(iii).")

6  Petitioner's First Degree Murder __ falls within the same

7  federal deportation laws as set forth in all the above second

8  degree murderers cases, which have been deported back to their

9  native countries.  All of the above second degree murderers

10  served five (5) years before INS officials initiate deportation

11  proceedings, however, this Nicaragua California illegal alien

12  prisoner has served more time on his first  degree murder

13  then any of the above murderers, but (BICE) agents from San

14  Jose still have failed to initiate deportation proceedings

15  in this case, which Petitioner maintains is arbitrary and

16  capricious and violates his equal protections rights.

17  H.  Petitioner maintains that his indefinite detention based
   on his USINS detainer as an illegal alien Nicaragua California
18  State Prisoner violates his due process right to a fair and
   impartial deportation hearing within a reasonable amount of
19  time-served on his California one count first degree murder.

20  Petitioner asserts that he has now served over eighteen

21  years in CDC&R and his one count first degree murder and that

22  (B1CE) agents located in San Jose California have refused

23  to initiate Petitioner's USINS detainer. The United States

24  Supreme Court stated in Zadvydas v. Davis, "A statute

25  permitting indefinite detention of an alien would raise a

26  serious constitutional problem.  The Fifth Amendment's Due

27  Process Clause forbids the Government to "deprive" any "person

28  Page-13-Petition for Deportation

1  . . . of . . . liberty . . . without due process of law."

2  Id. 533 U.S. 678, 121 S.Ct. 2491, 2498-99 (2001) (in relevant

3  part.) Indeed, "Petitioner's statutory claim that he is being

4  detained without the possibility of a fair and impartial

5  deportation hearing can be heard on habeas because it effects

6  a substantial right of Petitioner's in accordance with all

7  the above mentioned federal deportation laws. See Velasquez

8  v. Reno, 37 F.Supp.2d 663, 669 (D.N.J.1999) (quoting Henderson

9  v. INS, 157 F.3d 106, 122 (2nd Cir. 1998) "Stating that

10 statutory claims affecting the substantial rights of the sort

11 courts have secularly enforce.")

12     Petitioner has now served over eighteen years . . . on

13 his USINS detainer No.A24824078,    that the delay by BICE

14 agents to effectuate any type of deportation proceedings is

15 unreasonable, arbitrary and capricious. Because Petitioner

16 alleges his due process rights are being violated under the

17 test enunciated in Barker v. Wingo, 407 U.S. 514 (1972), for

18 evaluating delays under the Sixth Amendment, is often used

19 to evaluate delay under the Due Process Clause. Id. 407 U.S.

20 at 530. In this case Petitioner has not received any

21 information from CTF-Soledad Prison Officials when BICE agents

22 will activate his USINS detainer and start the deportation

23 process. In Baker the U.S. Supreme Court described a five

24 (5) year delay as "extraordinary." Id. 407 U.S. at 533; see

25 also U.S. v. Doggett, 906 F.2d 573, 578 (11th Cir.1990)

26 ("Ringstaff, the 11th Cir. found a twenty-three month delay

27 to be presumptive prejudicial. Id. 885 F.2d at 1543, quoting

28

cf. Bagga, 782 F.2d 1542 "thirty-six month delay presumptively prejudicial" and Dannard, 722 F.2d at 1513 "fifteen month delay presumptively prejudicial.")

In sum, this Petitioner has now served over nineteen years in the California Prison System and does maintain that "BICE" agents from San Jose have abused their administrative discretion, by refusing to conduct any deportation hearing thereby, denying Petitioner any form of procedural due process within a reasonable amount of time. See **Immigration & Naturalization Serv. v. Yany**, 519 U.S. 26, 32, 117 S.Ct. 350 (1993) ("irrational departure" from "general policy" governing exercise of administrative discretion "could constitute . . . an abuse of discretion.")

I. Petitioner maintains that the retroactive application of the 1994 Immigration and Technical Act, Pub. L. No. 103-416, 108 Stat. 4305 ("INTCA") in accordance with the United States Supreme Court decision of **I.N.S. v. St. Cyr**, 533 U.S. 289, 316, 121 S.Ct. 2271, 2289 fn. 42 (2001); and **Fernandez-Vargas v. Gonzales**, ___ U.S. ___, 126 S.Ct. 2422, 2428 (2006).

Petitioner's 1989 arrest and conviction for an "aggregated felony under Title 8 U.S.C. §1101a(43)(a)" is not retroactive under the 1994 Immigration and Technical Corrections Act, Pub. L. No. 103-416, 108 Stat. 4305 (heretoafter "INTCA.") The United States Supreme Court made clear in **I.N.S. v. St. Cyr**, 533 U.S. at 316 that congress did not make ("INTCA") retroactive to all illegal aliens already serving their sentences throughout the state prisons. Therefore, the older Ninth Circuit decision in **Garcia v. Taylor**, 40 F.3d 299, 301 (9th Cir.1994) must again be followed and that Petitioner

1  does have standing to force INS [now "BICE"] to start

2  deportations proceeding immediately, which is required pursuant

3  to Title 8 U.S.C. §1252(i) as follows:

4      "In the case of an alien who is convicted of an
        offense which makes the alien subject to deportation,

5      the Attorney General **SHALL** begin any deportation
        proceeding as <u>expeditious as possible after the</u>

6      <u>date of conviction</u>," (emphasis added.)

7      Petitioner is asking this Court to enforce his federal

8  statutory rights for a fair and impartial hearing for

9  deportation, and that "INTCA" is not retroactive to

10  Petitioner's 1989 arrest and conviction and therefore,

11  Petitioner should receive a fair and impartial hearing base

12  on his INS federal deportation hold promptly.

13                          Conclusion

14      Based on the forgoing, this Nicaragua illegal alien Cal.

15  State Prisoner should be granted relief as requested within

16  a reasonable time limit under the U.S. constitutional

17  amendments.

18  Dated this **20** day of July , 2008.

19                          Respectfully Submitted,

20

21

22                          RONALD M. LOPEZ
                            Petitioner In Pro Se
                            Without Bar Licensed Counsel

24

25

26

27              Page-16-Petition For Deportation

28

22
23

E X H I B I T    " A "

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

BOARD OF PAROLE HEARINGS
1515 K Street, 6th Floor
Sacramento, Ca. 95814



Effective May 1, 2004, the Board of Parole Hearings Appeals, formerly known as the Board of Prison Terms, section (15 CCR section 2050-2056) was repealed by Administrative Directive No. 04/01. The Board of Parole Hearings no longer has an Appeals Unit: therefore, the decisions or action regarding the issue listed below cannot be appealed and will no longer be addressed by the Board, regardless of whether the issues are written on a BPT 1040, a CDC 602, or in letter format:

- Due process (including hearing scheduling)
- Parole revocation process (including hearing panel issues)
- Early discharge requests (prior to discharge review)
- Good cause findings for hearings
- CDCR clerical errors regarding date/time/credit calculations/day for day
- CDCR/P&CSD staff related issues
- Submitted prior to a Board action
- Attorney issues
- Witness issues
- Time assessed at the revocation hearings

 You may go directly to the courts per California Department of Corrections and Rehabilitation, 15 CCR section 3160, inmate access to the courts. Forms are available at the institution's law library. If you are being housed at a county jail, you can obtain a copy of the forms at your jail housing unit.

Issues concerning clerical errors on BPH 1103 PCH an REV forms related to Board Decision, mandatory discharge, credit eligibility during revocation terms, BPH mandated special conditions of parole, retain on parole actions, and other rules of law, can be reviewed by the Board. You can submit these concerns via correspondence to the:

Board of Parole Hearings, Quality Control Unit
1515 "K" Street, Sixth Floor
Sacramento, Ca, 95814.

Sincerely,

Board of Parole Hearings
Attachment

First Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: AUG 2 8 2007  Due Date: OCT 1 1 2007

Interviewed by: _SGT Scott_ on 8/31/2007. During the interview you clarified your request in regards to the 602 and stated that you would like to be transfered to Nicaragua through the FPTTP. A review of your Central File reveals that you have a scheduled Annual Review in February 2008. At that time your case will be reviewed and if you meet the criteria for participation in the FPTTP you will be put up for Transfer.

Staff Signature: _____  Title: CCI  Date Completed: SEP 0 2007

Division Head Approved:

Signature: _____  Title: FC  Returned

Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. Lets **STOP** playing games, this 602 has absolutely nothing to do with FPTTTP discretionary program. This Nicaragua illegal alien is demanding that CTF-Soledad Officials contact the director of "BICE" in San Jose, and that you notify the director of "BICE", that this Nicaraguan "illegal alien" **MUST** be deported ASAP to his native country under all above mandatory deportation laws.

Signature: _Ronald M. Lopez_  Date Submitted: 09/16/07

Second Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: SEP 1 8 2007  Due Date: OCT 1 7 2007

☒ See Attached Letter

Signature: _____  Date Completed: 9/25/07

Warden/Superintendent Signature: _____  Date Returned to Inmate: SEP 2 8 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. Totally dissatisfied, this Nicaraguan illegal alien must be deported with a reasonable time limit. See 8 U.S.C. §1252(i), however, the California Prison System refuses to comply with these federal deportation laws. This Nicaraguan's relief for the deliberate failure to follow these federal deportation laws is in the Northern District Federal Court pursuant to Garcia v. Taylor, 40 F.3d 299, 301 (9th Cir. 1994); see I.N.S. v. St. Cyr, 533 U.S. 289, 316 (2001).

Signature: _Ronald M. Lopez_  Date Submitted: 10/07/07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other

☒ See Attached Letter  JAN 0 8 2008

Date: _____

CDC 602 (12/87)

(Continued CDC 602, by Ronald M. Lopez, E-78629 CW-230L)

<u>must</u> be afforded all his federal statutory deportation rights
in the California Prison System under Title 8 U.S.C. §§1182
(a)(2)(A)(i)(I), 1182 (c,h), 1101 (a)(43)(A), 1231 (b)(3)(B),
1227 (a)(2)(A)(iii), 1227 (2)(I)(II), 1228 (c), 1230b (a)(1),
1251 (a)(2)(A)(iii), 1252 et seq., and 8 C.F.R. §208.17 (a).
CTF-Soledad State Prison System cannot override these mandatory
federal laws with "state suitability for parole laws" as set forth
in <u>Freightliner Corp. v. Myrick</u>, 514 U.S. 280, 115 S.Ct. 1483,
1487 (1995). Furthermore, CTF-Soledad State Prison Officials
must follow the United States Supreme Court decision of <u>INS v.
St. Cyr.</u>, 533 U.S. 289, 325, 121 S.Ct. 2271, 2293 (2001), which
states that deportation of all illegal aliens under statutory
deportation laws is <u>"Certain"</u>; and the Second Circuit has described
the likelihood as <u>"automatic."</u> <u>United States v. Couto</u>, 311 F.3d
179, 184 (2nd Cir.2002). Therefore, CTF-Soledad State Officials
in accordance with the above federal mandatory deportation laws
<u>MUST</u> turnover this Nicaragua illegal alien to ("BICE") agents
from the San Jose office ASAP or this illegal alien will seek
immediate court action ordering you to comply with federal
deportation laws.

Respectfully Submitted,

_Ronald M. Lopez_
Ronald M. Lopez
Nicaragua Illegal Alien State Prisoner


CC/ This Appeal was filed with the aid of legal counsel at the
following address:
Attorney at Law
Charles F. Carbone
Post Office Box 212
3128 16th Street
San Francisco, Ca. 94103
(415) 531-1980
Fax (415) 252-9311
E-mail: charleseye@hotmail.com

Page-2-CDC 602

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Correctional Training Facility
Soledad, California

**RE:** CTF Appeal Log No:    **CTF: -S-07-03279**
SECOND LEVEL REVIEWER'S RESPONSE

LOPEZ        E78629        CW-230L

## APPEAL DECISION

DENIED

## APPEAL ISSUE:

CUSTODY/CLASSIFICATION

## APPEAL RESPONSE:

Inmate Lopez, in your appeal you state the following:

(1) That you are a Nicaragua illegal alien and you allege that the Correctional
Training Facility (CTF) officials are running an alien slave labor camp.

(2) That CTF is required to activate an illegal alien hearing review system under the
Administrative Procedures Act, 5 U.S.C. 706 (1) (2) (A) & (C).

(3) That CTF Prison Officials follow all federal statutory deportation laws and
activate the Nicaragua United States Immigration and Naturalization Service
(USINS) detainer. Additionally, you are requesting that (BICE) agents from the
San Jose Office take custody of you.

You were interviewed by Correctional Sergeant D. Scott on August 31, 2007, who
provided you the opportunity to explain your appeal and present supporting information
or documents. During the interview, you stated that you wanted to be transferred to
Nicaragua. Your appeal was Denied at the First Level of Response.

Dissatisfied with the First Level Response, you submitted your appeal for a Second Level
of Review

A thorough review of your appeal package and all of your attachments has been
completed and reveals the following;

(1) On 12-11-90, you were convicted for PC 187, Murder 1st and sentenced to 25
years to Life with a Minimum Eligible Release Date of 3-8-15.

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Correctional Training Facility
Soledad, California

CTF Appeal Log # CTF-S-07-03279
Page 2 of 2

(2) On 9-21-07, a call was placed to the Correctional Training Facility (CTF) USINS
Transfer Desk in regards to your Appeal. The person responsible for facilitating
USINS transfers stated that all cases will be reviewed approximately 30 to 60 days
before the established parole date.

(3) Your Initial Parole Consideration Hearing is currently scheduled for 3-8-15. If
   found suitable for parole and granted a release date, you will be transferred to
   Centinela or Calipatria State Prison pending USINS review.

Therefore, based on the aforementioned, your appeal is being **DENIED** at the Second
Level of Review.

Reviewed By: _____          9/25/07
             J. Soares, Associate Warden (A), CTF-C          Date

Reviewed By: _____          9/27/07
             Ben Curry, Warden (A) CTF-Soledad          Date

2

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:   JAN 0 8 2008

In re:   Ronald Lopez, E78629
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0710823          Local Log No.: CTF-07-03279

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pennington Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I   APPELLANT'S ARGUMENT: It is the appellant's position that he is a Nicaragua illegal alien and he alleges that the Correctional Training Facility (CTF) officials are running an alien slave labor camp. The appellant believes that CTF should be required to activate an illegal alien hearing review system under the Administrative Procedures Act, 5 U.S.C. 706 (1)(2)(A)&(C). The appellant has requested that CTF Prison Officials follow all Federal statutory deportation laws and activate the Nicaragua United States Immigration and Naturalization Service (USINS) detainer. Additionally, the appellant requests that Bureau of Immigrations and Custom Enforcement (BICE) agents from the San Jose Office take custody of the appellant immediately.

II   SECOND LEVEL'S DECISION: On August 31, 2007, the appellant was interviewed by Correctional Sergeant D. Scott. The reviewer established that on December 11, 1990, the appellant was convicted for California Penal Code Section 187, Murder first degree and was sentenced to 25 years to Life with a Minimum Eligible Release Date of March 18, 2015. On September 21, 2007, a call was placed to the CTF USINS transfer desk in regards to the appellant's appeal. The person responsible for facilitating USINS transfers stated that all cases will be reviewed approximately 30 to 60 days before the established parole date. The appellant's initial parole consideration hearing is currently scheduled for March 8, 2015. If at that time the appellant is found suitable for parole and granted a release date, he will be transferred to Centinela State Prison (CEN) or Calipatria State Prison (CAL) pending USINS review. Based on the information presented the appeal was denied at the Second Level of Review (SLR).

III   DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.   FINDINGS: Despite the appellant's dissatisfaction he has been provided with an appropriate response from the SLR. The appellant has failed to support his allegations with any evidence, information or documentation to warrant any modification to the SLR. The institution has provided the appellant with the correct information and informed him that 30 to 60 days before his March 18, 2015 MERD, his case will be reviewed and if at that time the appellant is found suitable for parole and granted a release date, he will be transferred to CEN or CAL pending USINS review. In view of the above, no further relief is deemed appropriate at the Director's Level of Review.

B.   BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3000, 3001, 3005, 3270, 3271, 3375, 3379

RONALD LOPEZ, E78629
CASE NO. 0710823
PAGE 2

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

**E X H I B I T   " B "**



# ALCALDIA MUNICIPAL DE TIPITAPA
## DEPARTAMENTO DE MANAGUA
### Telefax: 295-3386 • Teléfono: 295-3200

## Certificado de Reposición de Nacimiento

### Valor C$: 31. 00

**SERIE "B"**

El Registro del Estado Civil de las Personas

## CERTIFICA QUE     № 6391

TASAS POR SERVICIOS, DE CONFORMIDAD CON EL ARTO. 33 DEL PLAN ARBITRARIO Y LEY DE TIMBRE

| 1er. Apellido | 2do. Apellido | Nombres |
|---|---|---|
| **MIRANDA** | **LOPEZ** | **FRANCISCO  RONALD** |

| Nació el día | Mes | Año |
|---|---|---|
| **VEINTICINCO** | **AGOSTO** | **CINCUENTIOCHO** |

| En el Municipio de: | Departamento de: |
|---|---|
| TIPITAPA | MANAGUA |

| Hijo de | Padre | Madre |
|---|---|---|
| | PABLO MIRANDA RUIZ. | DORA LOPEZ HERNANDEZ. |

| Inscrito bajo partida No. | Tomo | Folio |
|---|---|---|
| 213 | 8512 | 107 |

| Libro de | Municipio | Departamento |
|---|---|---|
| REPOSICIONES | TIPITAPA | MANAGUA |

F.I. DIECIOCHO DE JUNIO DE MIL NOVECIENTOS NOVENTA Y DOS.

SEXO: MASCULINO.

Observaciones:

CATORCE       De       JULIO       del 200       SEIS.

LIC, JAVIER DE JESUS JUAREZ
REGISTRADOR CIVIL

SECRETARIA

# PROOF OF SERVICE BY MAIL
## BY PERSON IN STATE CUSTODY
### (C.C.P. §§ 1013(A), 2015,5)

I, Ronald M. Lopez _____, declare:

I am over 18 years of age and I am party to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California.  My prison address is:

**Ronald M. Lopez**, CDCR #: **E-78629**
CORRECTIONAL TRAINING FACILITY
P.O. BOX **705**, CELL #: **RB-244L**
SOLEDAD, CA 93960~

On **July / 20 , 2008** _____, I served the attached:

### Petition for Deportation

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined.  The envelope was addressed as follows:

**Northern District Federal Court**
**San Jose Division**
**280 S. First St., #2112**
**San Jose, Ca. 95113-3006**

**United States Attorney General Office**
**950 Pennsylvania Ave., N.W.**
**Washington D.C. 20530**

**Attorney General Office Cal.**
**455 Gold Gate Ave., Suite 11000**
**San Francisco, Ca. 94102-7004**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **July /20/ 2008**  .

RONALD M. LOPEZ -- PRISON No. E-78629
Declarant

CONFIDENTIAL
LEGAL MAIL

Ronald Miranda Lopez, E-78629
P.O. BOX-705-RB-244 1.
Soledad, Ca 93960



UNITED STATES POSTAGE
$ 04.800
0004226871  JUL 21 2008
MAILED FROM ZIP CODE 93960

Northern District Federal Court
San Jose Division
280 S. First st., #2112
San Jose, Ca  95113-3006



CONFIDENTIAL
LEGAL MAIL

Ronald Miranda Lopez,B-78629
P.O. BOX- 705 - RB-244, 1.
Soledad, Ca 93960

Northern District Federal Court
San Jose Division
280 S. First St.,#2112
San Jose, Ca 95113-3006



Cess 7/20/08

CONFIDENTIAL
LEGAL MAIL